Bland, Chancellor.
It appears that the defendant has thought proper to correct her defence as regards the character of her deceased husband. Giving his character in her answer, she has used the word intemperate, from which it may be inferred that he was either excessive in meat and drink, or that he was passionate and ungovernable. The word intemperate, according to the most approved authorities, conveys both of those meanings. The defendant now alleges, by her petition, that the latter was the sense in which she intended to use the word. Therefore, it is Ordered, that the defendant be, and she is hereby permitted to file a supplemental answer, correcting the mistake, as prayed; leaving to the parties the effect of what was originally sworn with the explanation of the supplemental answer, (a)
After which, the plaintiff put in his general replication, commissions were issued, and testimony taken and returned.
2d October, 1826.
Bland, Chancellor.
This case standing ready for hearing, the counsel on both sides were fully heard, and the proceedings read and considered. It very satisfactorily appears, from the proofs, that the contracts relied on by the plaintiff in his bill, were deliberately and fairly made and entered into in all respects whatever. And it also appears, that the plaintiff is now fully able to convey to the representatives of the late Gilbert Murdock, senior, a good and sufficient title to the property sold to him according to the terms of the contract between them.
With regard to the allegation of the defendant, that the plaintiff had previously brought another suit for the same cause, which suit was then depending, it will be sufficient to observe, that on adverting to the bill referred to, which was filed on the 15th of January, 1825, it appears upon the face of it, that it can only be considered as an injunction bill to stay waste; the prayer for a sale being utterly incompatible with its statement, must, necessarily, be regarded as mere surplusage. And, rejecting the prayer for a sale, it cannot, in any way whatever, be considered as a bill for a sale, or to foreclose a mortgage, which is the sole object of this suit. *464 There is not, therefore, now, nor has there been at any time depending in this court, as is alleged, two suits between these parties having the same object.
Whereupon, it is Decreed, that Elizabeth Murdock,, administratrix. of Gilbert Murdock, deceased, pay to the plaintiff the sum of $500, with interest thereon from the 27th of February, 1824, until paid, and the costs of this suit on or before the 2d day of November next. And that on the. said mortgage debt and costs being paid, the plaintiff convey to the defendant all the term of years yet to come in the lots in the proceedings mentioned. And on the defendant failing to pay, as ordered, then the mortgaged property to be sold for ready money, See. Sec.
From this decree the defendant appealed, and on the 25th of June, 1828, it was affirmed, with costs.
The trustee made sale of a part of the mortgaged property, as directed by the decree, and reported that he had sold the leasehold lot to the plaintiff on the 31st of July, 1828, for the sum of $20, ■which sale was finally ratified. The purchaser William Brewer then filed his petition, praying that the trustee might be directed to set off the purchase money against so much of his, the plaintiff’s, claim, except the commissions which he had paid, and that Elizabeth Murdock, the defendant, who held the property, might be ordered to deliver it up to him.
10th October, 1828.
Bland, Chancellor.
Ordered, that the account between the purchaser and the trustee be adjusted as prayed. And it is further Ordered, that the said Elizabeth Murdock forthwith deliver the possession of the property in the petition mentioned, unto the said William Brewer, or shew good cause to the contrary, on the 23d instant. Provided that a copy of this order, together with a copy of the foregoing petition, be served on the said Elizabeth on or before the 14th instant.
No cause having been shewn, an injunction to deliver possession was ordered and issued; which having been returned, but not having been obeyed, on the 31st of October, 1828, a habere facias possessionem was, on motion, ordered, by virtue of which, the purchaser was put into actual possession.
The trustee further reported that he had sold forty-four acres of land, being another parcel of the mortgaged property, upon-condition that if the purchaser did not pay, as required, on the day of *465 the ratification of the sale, that the next highest bidder should be considered as the purchaser, and that he had sold to Elizabeth Murdock, the defendant, as the highest bidder, and William Brewer, the plaintiff, as the next highest bidder. Upon which, the usual order nisi was passed;- which having been published, the matter was submitted.
20th January, 1829.
Bland, Chancellor.
While on the one hand this court has allowed to a trustee, in some respects, a greater range of discretion in making sales under a decree than is granted to a master in chancery in England; (b) so, on the other hand, it has, as occasion seemed to require, guarded such sales with more precautionary restrictions than have ever been adopted by the English court. This court will not suffer its proceedings to be delayed or perverted in any way whatever; (c) and therefore, where it has ascertained, that a person who had been reported by the trustee as the highest bidder had been unable to comply with his bid, or had conducted himself fraudulently, or had attempted to baffle the court; upon a re-sale, the trustee has been ordered to reject the bid of such person altogether. And so too where there is just reason to believe, that some one or more persons intend to outbid all others, and cause themselves to be reported as purchasers, with a design to embarrass the court, or to delay the plaintiff in the recovery of his claim; or who having no ostensible means of paying the purchase money, may yet be tempted to bid over every one else from an idle hope of being able to pay, the court may order or allow the trustee to report two or more persons as the highest bidders, upon the express condition, that if he who is reported as the highest bidder does not comply with the terms of sale, the next highest bidder may be received and considered as the purchaser, (d) The trustee has here very pro *466 perly made such a report in regard to the defendant who had already made default in not paying the debt within the time allowed *467 by the decree; which report may, therefore, be ratified, leaving it hereafter to be determined which of those two highest bidders is to be deemed tiie actnal purchaser.
Ordered, that the sale as made and reported by the trustee be absolutely ratified and confirmed, no cause having been shewn to the contrary as allowed by the said order, &c.
The trustee imfiaediately after represented by his petition, that Elizabeth Murdock had not paid the purchase money as stipulated, &c.
22d January, 1829.
Bland, Chancellor.
Ordered, that the said Elizabeth Murdock forthwith bring into court the purchase money now due for the property in the proceedings mentioned, together with legal interest thereon, or shew good cause to the contrary, on the 5th day of February next; provided, that a copy of this order, together with a copy of the foregoing petition be served on her on or before the 26th day of the present month.
The plaintiff William Brewer, by his petition, stating that Elizabeth Murdock had failed to pay the purchase money as ordered, prayed that he might be considered as the purchaser of the forty-four acres of land according to the terms of the sale as reported by the trustee; and that his claim might be set off against the net amount of the purchase money.
9th February, 1828.
Bland, Chancellor.
It appears that Elizabeth Murdock has been served with copies as required, and yet has shewn no cause. It is true that a trustee, or any one acting as such is not allowed, without divesting himself of that character, to purchase at a sale made by himself. But the policy of the *468 law which forbids that; because of the strong temptation to fraud, where there is such a conflict of duty and interest; and because one man should not be permitted to take advantage of the necessities of another, is not infringed by allowing a plaintiff, a creditor, or a mortgagee to purchase at a sheriff’s sale, or at a sale made by a trustee of this court; as, in such case, the party is proceeding adversely against his debtor, not by any private dealing, but by the public process of the law, in which he himfeelf is not the seller, but an impartial executive officer or agent of the court, (e) With regard to the discount asked for, it is certain, that the trustee, appointed by the decree to make the sale, can dispose of the purchase money in no way, without the express authority of the court, (f) But, as the mortgage debt, the recovery of which is the sole object of this suit, has been established by the decree for a sale, there can be no impropriety, after first deducting the commissions, expenses and costs, in ordering the proceeds to be, at once, applied in satisfaction of that debt, by discount with the mortgagee as purchaser, or in any other way. And Elizabeth Murdock having failed to comply with the terms of the contract of sale, William Brewer, the plaintiff and mortgagee, must be received as the purchaser, and be allowed the discount as prayed accordingly.
Therefore, it is Ordered, that the sale to Elizabeth Murdock be and the same is hereby rescinded; and the petitioner William Brewer be, and he is hereby deemed, taken, and in all respects to be considered as the purchaser of the property in the proceedings mentioned. And the trustee is directed, on the payment by him of all the costs and commissions of this suit, to discount the balance of the amount of the purchase money from the amount of the said William Brewer’s claim.
After which William Brewer, by petition, stated that he had complied with the order of the 9th of February, and therefore prayed to have the possession of the property of which he had so become the purchaser, delivered to him.
11th March, 1829.
Bland, Chancellor.
Ordered, that the said Elizabeth Murdock forthwith deliver possession of the property in the petition mentioned to the said William Brewer, or shew good cause to the contrary on the 28th instant; provided, *469 that a copy of this order, together with a copy of the foregoing petition, he served on the said Elizabeth on or before the 18th instant.
After which the matter standing ready for hearing, and the solicitors of the parties having been heard, and no sufficient cause having been shewn why the prayer of the petition should not be granted, it was on the 30th of March, 1829, Ordered, that an injunction issue commanding the said Elizabeth to deliver possession of the property to the said William Brewer. Which not having been obeyed, a habere facias possessionem was awarded, and he was put into possession. Afterwards the auditor stated an account, which was finally ratified on the 22d of October, 1829, from which it appeared, that there was still a balance of the mortgage debt left unpaid by the proceeds of the sales.
After this case had been thus terminated as against Elizabeth Murdock, William Brewer, on the 20th of April, 1830, filed his bill against Gilbert Murdock, in which Brewer stated, that under the before mentioned decree of the 2d of October, 1826, and order of the 9th of February, 1828, he had purchased and become seized of the tract of land in those proceedings mentioned; that this defendant Gilbert Murdock had erected, and persisted in continuing to erect, a fence, so as to include a part of the land so purchased by him, this plaintiff; and that he had brought an action of trespass quart clausum fregit against Gilbert Murdock to recover damages for the trespass so committed, which action was still depending. ■ Upon which he prayed for an injunction to prohibit the defendant ‘from continuing the said fence, and enjoining him to remove the said fence already erected;’ and for such other relief as the nature of the case might require. To this bill there was subjoined an affidavit of the plaintiff in the usual form. Upon which it was submitted.
20th April, 1830.
Bland, Chancellor.
The plaintiff prays for an injunction of a more extensive operation than can now be granted. He asks not merely, that things may be preserved in their present condition, but that some things which have been done may be undone; in other words, he asks the court now, and at once, to put forth in his behalf its remedial as well as its conservative powers.
But before imputed wrong can be removed, or any thing like *470 commutative justice can be administered, it is the duty of the court to give the party complained of an opportunity of being heard. To restrain a defendant from making any abusive use of the property in question; or from disposing of it past recall, amounts to no more than the imposition of a temporary limitation upon the free exercise of his rights, even if it should eventually appear to be entirely and rightfully his; which is quite as far as any court can go in the first instance; and as preparatory to a fair and beneficial hearing and final adjudication. To order a defendant to pull down or remove any erection would be obviously and directly to deprive him of a portion of that which then, at least, appeared to be his property, and was so claimed by him; and that too, at once, and without a hearing; for a house, a fence, or the like has a value, as such, which would be totally destroyed by its being pulled down, and which does not belong to the materials of which it was composed, however carefully they may be preserved.
The only object of the conservative power .of the court, as expressed in an injunction of this kind, is, not to determine any controverted right, but merely to prevent a threatened wrong, or any further perpetration of injury, or the doing of any act thereafter whereby the right to a thing may be embarrassed, or endangered, or whereby its value may be materially lessened, or the thing itself may be totally lost. The principal object of an injunction, in cases of this kind, is to prevent irreparable injury by preserving things in their present state; but if the injunction were to order any thing to be pulled down or undone, it is obvious, that it might be, itself used as a means of producing that very kind of irreparable injury to the defendant which the bill charged him with being about to perpetrate against the plaintiff, (g)
There are, however, some cases in which an injunction has been so framed as, apparently, to approach to the very verge of ordering a thing to be undone. As where the regular flowing of a stream of water had been so interrupted by the making, or the interposition of occasional breaches or obstructions, as to be very injurious to the use of it for a canal, or for propelling a mill; an injunction which commanded that the party should not thereafter continue to cause the stream to flow thus irregularly, seemed indirectly to command, and no doubt did involve the repairing of the breaches, and the r-emoving of the obstructions which had caused *471 the injurious irregularity complained of. From the peculiar nature of those cases, however, it is obvious that the existing and natural state of things could not otherwise have been preserved. The injunction, in those cases, did not command any thing to be undone, but merely that an injurious irregularity should not be any longer continued, considering the continuance of the act as a repetition of it. (h)
This court has always been governed by these principles in granting injunctions in so limited a form, as expressly, or in terms to require no alteration in the existing state of things, or any thing to be undone or restored; except in so far as a restoration may consequentially follow as a necessary result of the merely restrictive operation of the injunction. As in cases between tenants in common, the court may, under some circumstances, by an injunction or the appointment of a receiver, prevent one of them from taking all the profits to the absolute and total exclusion of the other; the obvious and necessary consequence of which must be to restore the plaintiff prospectively to the enjoyment of an important benefit. And yet the injunction itself could not command the defendant to undo any thing he had done; to re-instate any thing he had altered; or to restore to the plaintiff any thing of which he had been deprived. (i)
*472 Let writs of subpmna and injunction issue, as prayed by the said bill of complaint; except that the defendant is not to be enjoined as prayed to remove the said fence heretofore erected.
*473 The defendant answered the bill, and denied the right of the plaintiff to the land on which the fence, or any part of it, had been *474 or was about to be erected. And tbe case was thus permitted to stand over to await a decision in the action at law. (j)
*475 On the 14th of May, 1830, the plaintiff filed his petition, on oath, with the affidavits of three other persons in support of the *476 allegations of his petition, in which he stated that the defendant had discontinued the erection of the fence until the 8th instant, *477 when a certain William Murdock and Zachariah Johnson, of the city of Annapolis, well knowing that the said injunction had been *478 issued, and served on the said Gilbert Murdock, and acting as his agents, and with his consent, secretly and with great haste con *479 tinued, and completed the erection of said fence, in direct violation of the said injunction. Whereupon he prayed for an attachment *480 against them, and that the said Gilbert Murdock might be compelled to remove the part of the said fence, erected since the service of the said injunction.
*481 Gilbert Murdock, by his answer on oath to this petition, positively denied the whole charge of a breach of the injunction *482 generally and particularly, and declared that neither William Murdock nor Zachariah Johnson acted as his agents, nor -with his *483 knowledge or consent, in the matter imputed to him. William Murdock and Zachariah Johnson answered severally on oath; they *484 say they did not act as the agents, or with the consent or -knowledge of Gilbert Murdocks that they together drove some sheep to *485 graze in a field belonging to Gilbert Murdock, with his permission, and finding a few panels of the fence down, at the place spoken *486 of, they put them up to keep the sheep in the field. They disclaimed all right and title whatever to the field or place where they put up the fence, and aver that they acted in total ignorance of what they did having been in any way prohibited by an injunction of this court.
24:th May, 1830.
Bland, Chancellor.
To obtain, an attachment for a violation of an injunction, the party grieved must, by petition, state particularly the nature and extent of the breaches of the injunction of which he complains, and the person by whom they have been committed; and his petition must be supported by his own oath, or by the affidavits of others. Upon which, an attachment may be ordered, returnable forthwith, or on a particular day according to the nature and exigency of the case. The breaches so set forth in the petition and annexed affidavits, are the charges which the party brought before the court, is expected to answer upon oath. The charges thus set forth by the party complaining, standing in the place of special interrogatories, none need be propounded to the accused. If the party attached makes a full and frank answer to all the facts, and positively denies or justifies all that is alleged against him, he must be at once discharged, as having entirely acquitted himself of the contempt imputed to him. I know of no instance in this court in which *487 proofs and affidavits have been allowed to be introduced in opposition to the answer of the accused. If, on the other hand, the accused does not, by his answer, fully deny or justify the acts charged against him, he may be fined and imprisoned, or such terms imposed upon him as the justice of the case may require. (k)
In this instance Gilbert Murdock has, in the most complete and positive manner, denied all the charges made against himself, and the other two persons, who stand accused, sustain his answer by their assertion that they did not act as his agents, or with his knowledge. This is an injunction intended to do the office of a writ of estripment; as to which it is laid down, that if a stranger, of his own wrong, do waste, after the prohibition delivered unto the tenant, and against the tenant’s will, then the tenant shall not be punished for that waste. (l) Hence, it is clear, that this tenant, Gilbert Murdock, must be discharged with his costs.
But William Murdock and Johnson admit that they did the act complained of, and that they have no claim whatever to the place where they erected the fence. They must, then, by their own admission, be considered as trespassers, who undertook, at their peril, to meddle with property to which they had no manner of title; and as such they may justly be held responsible, in every way, for all the consequences of their unauthorized act.
It is, in general, true, that this process of attachment for contempt, in violating an injunction, can be directed against no one but a defendant to the injunction bill, or one who acts as an agent, or by some concert with a defendant; and it is also certain, that this court can have no concern with any action at common law, which may be brought against these trespassers. But that very act which these persons have done, this court, by its injunction, prohibited the defendant himself, as a claimant of the property, from doing, until the right should be determined between him and this plaintiff. It is evident, therefore, that these trespassers have altered that state of things which this court had determined should remain unchanged; they have benefitted the defendant by doing that which he himself was not allowed to do; they have injured the plaintiff in doing that which he had complained of as a wrong; and they have, without a shadow of right, impertinently inter-meddled with a matter which is the subject of a controversy de *488 pending in this court. Had they acted under a claim of title other than that of the defendant; their conduct, so far as regards this proceeding, must have been considered as entirely justified. Their ignorance of the act committed by them having been prohibited by an injunction of this court, and of its having any injurious bearing upon the matter in litigation in this suit, may be heard in mitigation of the wrong; but it cannot be deemed a justification of their conduct. A pragmatic trespasser subjects himself to all the consequences of his acts, as well in an action at common law, as on an attachment in this court, (m) I cannot make the defendant Gilbert Murdock pay the costs and take down the fence, because he is entirely innocent; and it would be highly unjust to throw the costs and the trouble of doing so upon the plaintiff William Brewer, because he is the party grieved. I shall, therefore, cast the whole upon these two trespassers.
Whereupon, it is Ordered, that Gilbert Murdock be and he is hereby discharged with his costs. And it is further Ordered, that the said William Murdock and Zachariah Johnson be, and they are hereby commanded and required, without delay, to take down and remove the fence erected by them, as stated in the proceedings, and to pay all the costs of this proceeding, to be taxed by the register, and to stand committed until the said costs are fully paid.

 Curling v. Townshend, 19 Ves. 630; Livesey v. Wilson, 1 Ves. & Bea. 149 ; Strange v. Collins, 2 Ves. & Bea. 163; Edwards v. McLeary, 2 Ves. & Bea. 256.

 Gibson’s Case, 1 Bland, 144.

 Deaver v. Reynolds, 1 Bland, 50.

 Monroe v. Monroe. — In this case the decree directed the real estate of Horatio G. Monroe, deceased, to be sold on a credit of twelve months. Before a ratification of the sale, or even the publication of the usual order nisi, the trustee, by his petition not sworn to, stated that James Monroe, who he had reported as the purchaser, had positively and repeatedly refused to give bond for the payment of the purchase money, as required by the terms of the sale; whereupon, the trustee prayed that a re-sale might be ordered at the cost of the purchaser, making him liable to pay the loss, if any, &c. Upon which an order was passed appointing a day for hearing, of which notice was to be given; after which notice having been given, the matter was brought before the court.
14i/t July, 1821. — Kilty, Chancellor. — Without expressing any opinion as to the liability of the purchaser to pay the difference or loss, if any, on a re-sale, I do not *466 consider it competent for the court to decree or order the same in a summary way. The trustee is authorized and directed to make a re-sale of the property as directed in the decree, repeating the notice, and inserting therein the further terms which are hereby added, to wit, that on failure of the highest bidder to comply with the terms, by giving bond on the day of sale, the next highest bidder will be considered the purchaser, and so on if there should be several bidders.
The property was re-sold accordingly, and the sale finally ratified.
Cresap v Martin. — In this case Hector Scott, the purchaser at the trustee’s sale, after the sale had been reported, and an order of ratification nisi had passed, but before the time allowed to shew cause had elapsed, on the 27th of May, 1822, filed his petition, in which he acknowledged he had been the highest bidder as reported, but prayed that the sale might not be ratified, because the land was subject to the liens of several other and prior incumbrances, the holders of which were not parties to the suit; and also, because Maria Keene, a party, was, at the time the suit was instituted, and then was a lunatic. At the foot of this petition the trustee subjoined his assent to the vacation of the sale, because the petitioner was, as he said, an insolvent debtor.
28lhMay, 1822. — Johnson, Chancellor. — The trustee, and Robert Oliver, who claims an interest jn the premises, also consent that the sale made to Hector Scott should be set aside, for the reasons set forth by them; and as Hector Scott is not satisfied with the title that may be obtained under the proceedings, an application on the part of the trustee is made, that he should not again be permitted as a purchaser.
It is thereupon Ordered, that the said sale, made by the trustee, be, and the same is hereby annulled and set aside. The trustee will again expose the premises to sale under the decree ; and at the time of sale, he will pay no regard to any bid the said Hector Scott may make for any part of the property, and the highest bidder, excluding the said Scott, shall be returned as the purchaser.
On the 7th of August, 1822, Hector Scott filed a petition remonstrating against the said order excluding him from the biddings, and stating that others, through him, might be willing to buy the land, notwithstanding any objections he might have to the title under the decree; and that his exclusion, or that of any one else, might materially prejudice the sale; and averring that he had no knowledge whatever of the proposal of the trustee to have him excluded.
8th August, 1822. — Johnson, Chancellor. — According to the report of the trustee heretofore made, Hector Scott was reported as the purchaser. By the terms of sale, the purchaser was to pay the money on the day of sale, or on the ratification. The money was not paid on the day of sale, and previous to the time fixed on for the ratification, the purchaser himself objected to the ratification, alleging the title was insecure, and requesting the sale should be annulled. The trustee seeing that the purchaser wished the contract to be destroyed, consented to an order to that effect. In the passing the order, no judgment was formed as to the sufficiency or insufficiency of the title; but as the purchaser himself had, on examination, it is presumed, satisfied himself of the defect of the title, it is hardly to be presumed he would wish again at a public sale to bid for the land, the title to which remained as before; but lest this might be done, and that for the purpose of delay, and to defeat an effectual sale, beneficial to those concerned in the decree, it was thought advisable to direct *467 the trustee not to receive a bid of him before returned as the purchaser. Since the order of exclusion the terms of sale are modified, requiring the purchaser to give security at the time of the sale, to the satisfaction of the trustee, for the payment of the purchase money. And as this change will prevent those from bidding who will not, or cannot give the security, the order therefore passed on the 28th of May last, so far as it relates to Hector Scott’s prohibition to bid, be, and the same is hereby rescinded. And to avoid an interposition so as to defeat an effectual sale, it is now Ordered, that unless he who is the highest bidder shall comply with the terms of the sale, the person next bidding shall be returned as the purchaser, on his complying with the terms, and so on in succession, until the terms are complied with. As the properly has been returned as sold to one person, who found fault with the sale, having had sufficient time to inquire into the title, should he be returned as the purchaser, he must be considered buying the right such as it is, and no future objections will be received on the insufficiency of the title. — M.S.

 Stratford v. Twynam, 4 Cond. Cha. Rep. 193.

 Bennett v. Hamill, 2 Scho. & Lefr. 581.

 Duvall v. Waters, 1 Bland, 569.

 Ryder v. Bentham, 1 Ves. 543; Robinson v. Byron, 1 Bro. C. C. 588; Anonymous, 1 Ves. jun. 140; Lane v. Newdigate, 10 Ves. 193; Blakemore v. The Glamorganshire Canal Navigation, 6 Cond. Cha. Rep. 544; Eden Inj. 238.

 Tyson v. Fairclough, 1 Cond. Cha. Rep. 386.
Norwood v. Norwood. — This bill was filed on the 11th of May, 1796, by Edward Norwood against Samuel Norwood. It states that Edward Norwood, the father of the parties, by his last will and testament, bearing date on the 25th of March, 1770, devised as follows :
T give and bequeath to my dearly and well beloved wife Mary Norwood, all that part of a tract or parcel of land called United Friendship, lying between Dry Run and Persimmon, and northward as far as the line of the land called The Forest, for and during her natural life and no longer. I give and bequeath to my son Edward Norwood and my son Samuel Norwood, all the tract of land whereon I now dwell called United Friendship, to be equally divided between them, their heirs or assigns, forever; but in case either of my said sons should die before they come of age, then it is my will that the survivor shall have and possess the whole tract, but not to disturb my wife during her life: and if.it should so happen, that both my sons Edward and Samuel, should die before they come of age, then it is my will, that it shall be equally divided between my three daughters and youngest son, viz: Ruth Norwood, Elizabeth Norwood, Mary Norwood, and John Norwood, to them, their heirs and assigns, forever.’
Some time after which the testator died, and on the 21st of January, 1772, his will was proved according to law. By virtue of which devise, these parties became *472 seized and possessed of the said land as tenants in common, and used the same accordingly until the year 1785, previous to which period, sundry valuable improvements had been erected on a part of it by the plaintiff; that these parties in the year 1784, by their joint labour and expense, made a public road through the said land, from Baltimore to the river Patapsco, where they had established a ferry, erected a ferry-house, &c.; which ferry was carried on by them jointly, and the net profits thereof divided between them weekly; that on the 12th of November, 1785, these parties entered into an agreement for a partition, whereby, that part on which the buildings had been erected was assigned to the plaintiff, and the other part, adjoining the ferry, was allotted to the defendant, that certain persons were thereby nominated and appointed to malee the division, so that each should have an equal quantity of wood and land; and to adjudge and ascertain the difference of soil; and that proper judges should be appointed to ascertain the value of the buildings, on each part, which was to be accounted for in the settlement between the parties; in which division and valuation, however, the ferry and its appendages, were not to be taken into consideration, or valued and divided; but to remain as joint property, and the profits thereof to be equally divided between them; that on the 12th of December, 3785, the referees awarded, that the defendant should pay to the plaintiff the sum of £400, for the difference of soil, which sum the plaintiff agreed to take; that three skilful persons were chosen to value the improvements, who awarded, that the improvements on the plaintiff’s part amounted to £1,290 5s. 2d. and those on the defendant’s part amounted to £215 Os. 0d.; so that the balance due from the plaintiff to the defendant, on account of improvements, amounted to the sum of £537 12s. 7d. which were exclusive of the ferry and its benefits; that in pursuance of the said agreement the parties entered upon, and became severally possessed of the parts of the tract called United Friendship, according to the division thus made; and had ever since so occupied and enjoyed the same, except the ferry, which was then, and had always since, been held by them as tenants in common, for their joint benefit; that in order to have a final settlement of all their dealings and transactions, certain persons were chosen and appointed to arbitrate, settle, and adjust all claims and demands between them, who met accordingly, on the 15th of June, 1787, and awarded a balance to be due to the plaintiff of £ 168 Os. id. after allowing and crediting the before mentioned sums, awarded for differences of soil and improvements; rvhich adjustment was always acquiesced in, and never called in question by the defendant until about the month of May last, that these parties had jointly held the ferry, and divided the profits thereof weekly from the time it was established until the 6th of September last, when the defendant, without any just cause, and in violation of their agreement, had disturbed the plaintiff in the possession of his moiety, taken the whole to his own use, and prevented the plaintiff from recovering any part of the profits thereof;, that the average monthly profits of the ferry amounted to £35 or £40, to one-half of which the plaintiff was entitled.
Whereupon it was prayed, that the defendant might be compelled to execute deeds of partition, according to the terms of the said division; that the defendant be ordered to account for the rents and profits of the ferry; that the plaintiff might be quieted in the possession and enjoyment of his half-part thereof; and that he might have such further and other relief as the nature of his case might require; and that a writ of injunction might be granted, directed to the defendant, ‘ commanding him *473 to stay, surcease, and forbear from molesting or disturbing the plaintiff, in the peaceable possession and quiet enjoyment of one moiety and half-part of the said ferry and ferry-house situate on the said land, called United Friendship, lying in Baltimore county, and the appendages to the same belonging; and also injoining and prohibiting him from preventing the plaintiff from receiving his half-part of the profits of the said ferry, called Patapsco Upper Ferry, weekly and every week, according to the agreement between the parties aforesaid, till the court should take further order in the premises.’
11th May, 1796. — Hanson, Chancellor. — The Chancellor has examined this bill, it appears to him, that an injunction granted on filing a bill, and before hearing of the defendant, never does and never ought to go further than to prohibit the defendant from doing something which appears, from the statement of the bill, tobe against equity and good conscience, and prejudicial to the rights of the complainant, for Instance, to stay waste or proceedings at law, &c. &c. that is, to suspend the defendant, &c. An injunction directing the defendant to put the complainant into possession of a benefit, or what is stated to be his right, is never to be granted, as the Chancellor conceives, until a final hearing of the whole merits of the cause, unless In the case of a right established by record. The statement of the bill is imperfect; but the Chancellor supposes, from the nature of the application, that the conduct of the ferry, and the possession thereof, is in the defendant. If so, the injunction prayed is, in effect, to direct the defendant to settle weekly with the complainant, and pay him one-half of the profits, which indeed are, and must be, uncertain; that is to say, the injunction is to put the complainant into possession of a benefit. The complainant does not pray that the defendant be prohibited from carrying on the ferry, &e. &c. If the conduct of the ferry be in the bands of the complainant, he needs the aid of this court as prayed. In short, it appears to the Chancellor that he cannot, with propriety, grant the injunction on the bare statement of the complainant and his vouchers, considered ex parte. Whether or not an injunction may be granted or decreed, on the final hearing, is a question which may hereafter be determined.
The next day the bill was, with some suggestions and references, again submitted to the Chancellor for re-consideration.
12th May, 1796. — Hanson, Chancellor. — The Chancellor has again considered this case. He finds that an injunction has been granted by Chancellor Rogers, in the case of Dallam v. Onion. The principle on which it was there granted, must apply to the present case; and although the Chancellor is satisfied that, in a case like the present, an injunction was never granted in England, and he retains the opinion delivered yesterday, it is Ordered, that injunction issue as prayed by the bill. At the same time he declares, that he shall most severely punish a violation of the injunction, in case the defendant shall fail to make it appear that he has no right to the benefit he claims.
The defendant, by his answer filed on the 19th of September, 1796, admitted the devise, the possession of the land, and the establishment of a ferry, the profits of which were, for some time, divided weekly as slated ; but denied that a public road had been opened to it by them; and alleged, that the road to the ferry, then used, ran through his land and was used by his permission, and not from any establishment of it by law; that there never was any ancient road to the feriy, but that the ancient *474 road was considerably above, and crossed a ford of Patapsco falls, and being more circuitous, was tbe reason for permitting the then road to be opened; that the boat, &c. procured at their joint expense, had long since been consumed, and the boat and appendages then used had been procured by the defendant, and the ferry carried on at his sole expense, since his refusal to permit the plaintiff to participate in the profits ; that as the widow, of the testator was entitled to a life estate in the land on which the buildings had been erected, it was agreed between these parties, that new buildings should be put up at their joint expense, which improvements were made accordingly as stated; that it was agreed that a partition should be, and it was made, with a valuation as stated; that there were a variety of dealings and transactions between them, of which there never was any final adjustment's stated, or in any other manner whatever; that he was justified in taking to his sole benefit the profits of the ferry as then used, inasmuch as it had been erected and supported at his sole expense, and as the plaintiff was largely indebted to him, he had a right to apply the proceeds of the ferry to the payment thereof; that the plaintiff had been permitted to receive a moiety of the profits of the ferry since the service of the injunction ; that the defendant had since erected a ferry upon his own land, at his own expense, lower down the river, in no wise connected with or dependent upon the ancient ferry on the plaintiff’s land; and that the agreement between them to divide the profits of the ferry was not intended to be perpetual, but only for such time as the boat, rope, and appendages of the ferrry, erected at their joint expense, should last. ’ '
On the 15th of November, 1796, it was agreed that the bill and answer might be amended. Whereupon the plaintiff filed an amended bill, in which he stated, that since the issuing of the injunction the defendant had, in fraud of the agreement between them to have a joint ferry, set up a new ferry, on the tract of land called United Friendship, about twenty yards below, expressly with a view to injure and defraud the plaintiff; that the road to both ferries was the same; and the custom being to and from the same places, was the same to both ; that in the year 1783 these parties, to secure to themselves the benefit of a ferry for their mutual benefit, obtained a lease of one acre of land as a landing place, on the opposite side of the river, from the Baltimore company, for ninety-nine years, renewable for ever, for which the rent had been regularly paid, which was strong evidence that the ferry was to be perpetually kept up by them for their joint benefit; notwithstanding which the defendant had since bought or leased a piece of ground, as a landing, about twenty yards below the said acre, in order to defeat the advantages resulting from the said lease, to the manifest injury of the plaintiff. Upon which it was prayed that the defendant might be compelled to abate and stay the ferry so by him lately erected, and be prohibited from erecting any other ferry on the tract of land called United Friendship than the joint one, which had been previously established; and that the plaintiff might have such other and further relief as the nature of his case might require.
To this amended bill the defendant, on the 14th of January, 1798, put in his answer, in which he said, that he admitted he had, since the service of the injunction, erected and supported a new ferry over Patapsco river, on his own part of United Friendship, and had deserted the former ferry; which was not done with a view to *475 defraud the plaintiff, hut to increase the value of the defendant’s own property; that he had purchased, and was then the sole owner, of two acres of land, on the west side of Patapsco river, which he used as a landing to his newly erected ferry; that the Baltimore company had loosely agreed to lease an acre of ground to these parties, but this defendant never conceived that any permanent interest was contracted for as stated, but that it was a matter of temporary accommodation, from which these parties and all others might be, at any time, precluded by the Baltimore company.
On the 29th of March, 1798, the plaintiff, by his petition, stated, that it was necessary for the illustration of the matters in dispute, to have the tract of land called United Friendship laid down, together with the division thereof, the improvements on their respective parts, and the ferry. Whereupon he prayed for an order of survey, &c.
29th March, 1798. — Hanson, Chancellor. — Ordered, that the surveyor of Baltimore county lay down and return a plot and certificate of any land which he may be instructed by either party to lay down, for illustration of the dispute between them.
Under this order a survey was made, and a plot and certificate returned accordingly ; and the commission, which had been previously issued, was also returned, with the depositions of sundry witnesses, and some documentary evidence was also returned and filed on the 5th of May, 1798. After which the case was set down for hearing on the 8th of November, 1798.
But on the 30th of October, 1798, the defendant, by his petition on oath, stated, that since the return of the commission and the survey, he had discovered that the land whereon the ferry-house, landing, &c. stand, was not included within the lines of the tract called United Friendship, and that he had taken it up as vacant land, agreeably to the rules of the land office; that it was essential to have some additional locations made, which were not known to him until since the return of the commission. Whereupon he prayed, that the hearing might be postponed, &c.
5th November, 1798. — Hanson, Chancellor. — It is stated to the Chancellor, on behalf of the complainant, that in executing the order for laying down lands for illustration, the surveyor hath refused to make out the complainant’s illustrations ort the plots whereon he hath made out, or is about to make out the defendant’s illustrations ; and that the said surveyor hath declared to the complainant, that he will not do otherwise than return a separate plot for each party.
The Chancellor thinks proper to declare it to have been his expectation, in passing the said order, that only one plot and certificate should be returned to this court, on which plot should be laid down any lands which either party should instruct him to lay down. It hath always been the practice for surveyors, on similar occasions, to lay down lands for both parties on the same plot; and it appears to the Chancellor, that unless the lands laid down, by the directions of each party, shall be contained in one plot, it will be extremely difficult, if not impossible, that the matter in dispute can be illustrated.
It is therefore Ordered, that the surveyor of Baltimore do lay down and return to this court, one plot and certificate containing all the lands which both or either of the parties shall direct him to lay down for illustration of the matter in dispute. But nothing herein contained is intended to restrain the surveyor from gratifying either of the parties who shall think proper to direct him to make an additional plot. It is further Ordered, at the instance of the complainant, that the decision of this cause be postponedto the twentieth instant, and that it shall be heard on that day; pro *476 vided a copy of this order be served on the defendant or his solicitor, at any time before the tenth instant.
Under this order a further survey was made, the lands laid down for illustration as required, and a plot returned; after which the case was set down for hearing, and brought before the court.
5th February, 1799. — Hanson, Chancellor. — The said cause being set down for hearing, and being debated by the counsel in writing, the bill, answer, exhibits, depositions, and all other proceedings, were by the Chancellor read and examined, and the written arguments of the counsel on each side were by him read and considered.
The complainant had' three objects proposed by the bill as it stands amended — . first, to have an agreement for the division of the land enforced; secondly, to have an account of the profits of a ferry supposed to be on the land in the bill mentioned, conformably to the said agreement, and to be secured in the receipt of one-half thereof in future; and, thirdly, to have the suppression of another ferry, set up near the common ferry by the defendant.
It seems that the defendant considered it of importance, to prove that the ferry-house, &c. are not, as was supposed at the time of the agreement, on the tract of land which was to be divided. He therefore obtained an order for laying down lands for illustration. But if the Chancellor conceived it of consequence to have the precise running of the land ascertained, he certainly could not, without violating the well known established principles of this court, undertake to decide on the location, but would refer it to a jury. He cannot, therefore, otherwise than regret, that the parties have incurred an unnecessary expense. It appears that they were in possession of the ferry, landing, &c. as part of the tract of land devised to them by their father; that they agreed upon a division of the land as possessed; and that they have since held, according to the agreement. This court cannot then do otherwise than say, that the agreement shall be enforced; and that the complainant is entitled to an account of the ferry, as prayed by the bill.
As to the third object of the bill, viz: to have a suppression of the ferry which is alleged to have been set up by the defendant contrary to the spirit of the agreement, and the rights of the complaint, there are not perhaps, sufficient circumstances thereto relative brought before the court, to enable the Chancellor to decide. But supposing the case to be as he conjectures, there is no decision that he knows of, in the books, or in the records of this court which can be thought exactly in point. He conceives, however, that the question may be decided by common sense, without the aid of learning and authority. If two persons agree to set up, at their joint expense, a ferry for the accommodation of travellers on a certain road, and the ferry is accordingly set up; and then one of them sets up another ferry, for his own emolument, at a distance of twenty, thirty, fifty, or one hundred yards from the old ferry to accommodate the same set of travellers; who is there that will not conceive the act to be a direct violation of the rights and interests of his partner ? But if the new ferry be only at a small distance, and yet is only for the accommodation of travellers on another road, who would not otherwise cross at the old ferry, it cannot be supposed, that the partner is entitled to have it suppressed, How, whether the new ferry, in the present case, be of the latter or former kind, does not, as has been intimated, clearly appear. It is impossible for the Chancellor to proceed immediately to a final decree;'and therefore the last question may remain for further consideration, and perhaps further preparation relative thereto, may yet be made. ,
*477 Decreed, that the defendant account with the complainant for one-half of the profits of the ferry in the bill mentioned, from the time when the defendant took, and so iong as he has retained the whole profits thereof; that the parties shall further account with each other relative to all debts whatever, arising on the agreement aforesaid or otherwise. That the auditor state the account or accounts between the parties on notice to them given, and from the proofs in this cause, or other competent legal proofs which shall to him be produced; and that having stated the account or accounts he shall report and return the same, subject to the exceptions of either party, and to be done with as shall seem just.
N. B. — The complainant’s bill alleges, that the new ferry is set up at a distance of about twenty yards. The defendant’s answer, says, that the new ferry is lower down, on his own land. But whether there are different roads, &c. as before mentioned, is not yet established.
On the 28th of March, 1799, the defendant, by his petition, on oath, stated, that for many years from the time of the death of his father, the accounts of the profits and expenditures of the land called United Friendship, to which the ferry was alleged to belong, were kept in certain books of accounts, or entries, which contain also the general accounts between them, as well relative to the said farm and terry, as other transactions concerning their father’s estate, and their common concerns, which he cannot otherwise identify than by reference to their subject matter, were left in the possession of the plaintiff, and were then in his possession or under his control; that this defendant expects to prove by them various charges, for which he has no other proof. Whereupon, it was prayed, that they might be produced before the auditor, &c.
2Sth March, 1799. — Hanson, Chancellor. — Ordered, that the complainant do forthwith produce to, and lodge with the auditor for the purpose of his stating an account between the parties, every book in his, the complainant’s possession, which contains any entry, memorandum, or statement, relative to the matter in dispute between them; and to the account to be stated in conformity to the decree in this cause lately
On the 13th of April, 1799, the auditor filed a report, in which he said, that in obedience to the decree, after having given notice to the parties, and having received what further testimony they chose to produce, he had stated accounts Nos. 1, 2, 3, 4, and 5. That account No. 1, was a copy from the books of complainant, commencing in the year 1775, which appeared to have been adjusted and settled by arbitrators, and after charging interest, the balance struck on the 14th of June, 1787, which then amounted to £160 Os. id. That for this account there did not appear any other evidence, or voucher, except the waste books and ledger, lodged by the complainant where the original entries appeared to have been made. That I.'o. 2, was an account of the ferriages received by the complainant for his proportion of tolls as entered in his cash book monthly, commencing on the 23d of May, 1786, to the 31st of October, 1796. And from this view of the profits, the auditor had made an estimate on the back of said account of the probable monthly receipts at said ferry. That No. 3, was an account stated from the balance on account No. 1, which was stated in that manner, in order that the private accounts, and the account for the profits of the ferry might be distinct. That in this account, the defendant had credit for his half of £145 7s. 9Jd. being sundry receipts which he had exhibited, and *478 which do not appear to have been entered on the complainant’s books; they appear to be accounts against E. and S. Norwood; but how far the complainant was concerned in the whole of the said debts, the auditor cannot say. The balance due the complainant, on this account, including interest to this day, amounted to ¿£68 18s. 2d. That account No. 4, was the complainant’s proportion of ferriages from the 6th of September, 1795, to the 23d of June, 1796, with interest thereon to this day, amounting to £164 9s. 2d. That account No. 5, was a further account of ferriages from the 1st of November, 1796, when the defendant moved the ferry-boat, &c. from the old ferry to the new ferry erected on his own landing, amounting to ¿£554 Is. 5d. exclusive of interest.
25th May, 1799. — Hanson, Chancellor. — On the complainant’s motion it is Ordered, that the auditor’s report and the accounts by him stated in this cause, shall be approved, ratified, and confirmed; unless exceptions thereto be filed on or before the 1st day of August next; provided a copy of this order be served on the defendant before the 5th day of July next.
On the 27th of July, 1799, the defendant filed exceptions to the auditor’s report; first, for that the account, No. 1, was not an account settled, or acquiesced in by the complainant or defendant, and is erroneous and unjust; and was so proved by the said Zachariah M’Cubbin, particularly in the item of £400, charged by the defendant for difference of soil, &c. which was the whole difference of soil, &c.; and one-half whereof only ought to have been charged to the defendant. Second, for that the auditor had no proof of the account of ferriages received and charged to the defendants, but written accounts of the complainant’s, and which were in no wise authenticated. Third, for that the auditor had not made allowances to the defendant which he wa3 entitled to, and which were specified in the account filed by him.
Isf August, 1799. — Hanson, Chancellor.-^On complainant’s motion, Ordered, that the defendant’s exceptions be heard on the first week in the following term; provided a copy of this order be served on the defendant, or his solicitor, at any tinm. during the present month.
A copy of this order having been served, the matter was submitted for determination.
14th October, 1799. — Hanson, Chancellor. — The order passed on the first day of August last having been duly served, and no argument being offered on the defendant’s part, and there being a submission on the part of the complainants, the Chancellor considered the exceptions of the defendants; and it is adjudged and Ordered, that the same be overruled, and that the report of' the auditor, and the accounts by him stated, be approved, ratified, and confirmed.
This order having been passed upon a submission of the matter, made under a misapprehension as was alleged, the case was again brought before the court.
5th November, 1799. — Hanson, Chancellor. — The complainant’s counsel having admitted that it had been understood between him and the counsel of the defendant, that the argument on the exceptions, which had been appointed to take place during the first week of this term should be postponed; and that in consequence thereof the said defendant’s counsel had failed to attend at the appointed time; and the Chancellor having, on the idea of the said counsel’s abandoning the exceptions, which were not sufliciently pointed and particular, passed an order ratifying the auditor’s *479 report; it was determined that the said order be rescinded, and that the said exceptions be debated. The argument of the counsel on each side was accordingly heard and considered.
The present cause appears to the Chancellor to be one of those cases in which it is extremely difficult, if not altogether impracticable, for him to do complete justice without violating strict law, which he is not at liberty to dispense with, and departing from established principles. He therefore feels himself under embarrasment, and to relieve himself from it, as well as to make an end, in the most eligible manner, of a contest, which hath been attended with much expense, delay, and vexation, he thinks proper, before he proceeds to a decision on the argument, or gives any intimation of his opinion relative to its merits, to make a proposition, on which he requests the parties immediately to determine. His proposition is, that the parties, by writing, to be here filed, shall submit to him, as an arbitrator, all matters in dispute between them in this cause; and that an order be thereon passed by consent, for submitting as aforesaid, and that a decree be passed on his award, when returned; and that each parly shall be at liberty, notwithstanding, to appeal; in order that the Court of Appeals may reverse, or change his decree, in case his award shall be liable to such objection or objections, or contain such error or errrors as might be deemed sufficient to set aside an award made by any other person.
The parties having considered this proposition and refused to accede to it, the case was again submitted.
15¡/í November, 1799. — Hanson, Chancellor. — The complainant having verbally refused to comply with the proposition made by the Chancellor on the 5th instant, the Chancellor is under the necessity of deciding according to what he conceives the rules of law, and the established principles of this court.
If the settlement made by the persons who are stated to have been appointed by the parties to decide between them, could be considered as a regular, final and complete award, it would not, in this court, avail the complainant. It is notorious, that this court never compels the performance of an award, merely as such, unless made under an order on the submission in court of the parties. But the said settlement cannot be considered as an award. For, supposing that a submission to the said persons had been regularly made, it does not appear that the said settlement was ever declared and delivered as an award. If the said settlement is not to be considered as an award, in what other way can it be considered as effectual ? Can it be received as evidence, that on the day of its date the balance stated to be due to Edward Norwood, was actually due to him? No ! It is expressly stated, that the settlement was made chiefly from the books of the complainant; and all that can be inferred from it is, that the said persons were satisfied, that there was a certain balance due on a certain day from the defendant to the complainant. The second and third exceptions not having been insisted on by the defendant; and his counsel having in open court expressly declared, that they would not insist upon the same.
It is hereby adjudged, that the first exception of the defendant be, and it is hereby admitted to be good; and that the second and third exceptions of the said defendant be, and they are hereby disallowed. It is further Ordered, that the auditor re-state the account No. 1, on such evidence as has been or shall be produced, not considering the settlement aforesaid as evidence. But it appears to the Chancellor, that the full sum of ¿£400 for the difference in value of the land, &c. ought to be charged to the defendant, the persons appointed to value having by plain, unequi *480 vocal language, awarded it to be paid by him for the said difference. He is therefore to be charged with it.
On the 31st of January, 1800, the auditor, in obedience to this order, reported, that he had re-stated an account No. 6, between the complainant and defendant, on which there appeared due to the defendant £258 17s. lid. including interest. That from exhibits filed by the defendant, he had stated another account, No. 7, on which there was due to the defendant £63 6s. 4d., including interest. But that the evidence from which it had been stated, were receipts for money stated to have been paid by the defendant on account of E. & S. Norwood, without any additional legal proof of the facts, as to the actual payments of the defendant, or the handwriting of the persons to whom such sums were stated to have been paid; that he had therefore stated the account No. 7, distinct from account No. 6. That he had stated in No. 8, a summary of the testimony taken before him, and from the additional testimony and exhibits filed by the parties; on which he had made sundry remarks, and stated his objections to such parts thereof as ought to be rejected. That the complainant had filed three waste books, one cash book, and one ledger marked E. N. No. 1; E. N. No. 2; E. N. No. 3; E. N. No. 4; and E. N. No. 5; but from which the auditor had made no extract or charge; those books not being proved or admitted as legal testimony by the defendant. They appear to have been filed to prove the defendant’s knowledge of the accounts therein stated, many of the entries having been made, as proved by the deposition of a witness, in the hand-writing of the defendant. That he had also stated account No. 9, wherein he had brought the balances due the complainant on the accounts Nos. 4 and 5, for the ferry, and the balances due the defendant on accounts No. 6 and 7, which left a balance due the complainant of ¿6456 12s. 8d., including interest to that date. That he had also stated account No. 10, taking the balance due the complainant for the ferry, and the balance due the defendant on account No. 6, leaving out No. 7, in case it should not be allowed, which left a balance due the complainant of £519 19s. 0d., including interest.
To this report of the auditor, the plaintiff, on the 19th of April, 1800, excepted; first; for that the auditor hath charged the complainant with the sum of £63 6s. id., being the amount of account No. 7, although there is no proof to establish any of the items contained in said account; and therefore, the same ought not to have been allowed; second, for that the auditor hath omitted to charge the defendant with sundry sums of money, and with sundry articles properly chargeable in account. All of which are particularized and enumerated in the books of accounts, marked E. N. No. 1, to E. N. No. 5, inclusive; although the defendant, in sundry instances, hath charged himself therewith, in his own hand-writing; third, for that the said auditor hath charged the complainant in account No. 6, with the sum of £537 12s. 7d,, for difference of the buildings, without allowing him any credit for materials found, and for payments made to workmen for erecting the same; fourth, for that the said auditor hath charged the complainant with the amount of the accounts Nos. 6 and 7; although the said accounts originated and accrued more than three years before the filing of the original bill in this cause. And therefore, now barred by the act of limitations. Which said act of limitations, the complainant insists on,, in bar to the said accounts, and all other accounts between the said parties, existing for three years previous to filing the said original bill in this case.
*481 And on the same day, the defendant also excepted to the same report of the auditor ; first, for that the auditor has not charged the complainant with the defendant’s share of his father's personal estate, decreed against the complainant as executor of his said father, by the Orphans Court of Baltimore county; second, for that the allowances made to the complainant, per accounts of ferriages, Nos. 4 and 5, are not authorized by the proof in the cause, but are conjectural; third, for that the auditor has refused, against proof in this cause, to allow the defendant for thirteen years’ ferriages as manager of the farm on United Friendship; fourth, for that the auditor has refused to allow to the defendant the credit side of the account C., No. 5, proved by William Hammond and Zachariah McCubbin, to have been admitted by the complainant, and also established by the defendant by other proof in the cause; fifth, for that the auditor, misconceiving the decision of the Chancellor, has rejected evidence to establish the truth of the facts stated, and items entered on the credit side of the said account C„ No. 5; sixth, for that the auditor has refused to make to the defendant an allowance of the several items established and proved against the complainant, by John Dorsey, exhibit B.; Archibald Moncreiff, exhibit C. C. and E. E.; William Russell, exhibit D. D., and also the items proved by Elam Bailey, Allen Dorsey, and Samuel Godman.
21s/ May, 1800. — Hanson, Chancellor. — The day appointed for arguing the exceptions to the auditor’s report having arrived, and the Chancellor being ready to examine said exceptions, and to hear the arguments; neither the defendant nor his counsel appeared. On account of the absence of said counsel, the defendant, perhaps, had he been present, might have had the cause adjourned; but the complainant and his counsel being anxious for a speedy decision, prayed the Chancellor to proceed without hearing any argument, or receiving any observations on either side. The request appearing, under all circumstances of the case, to be reasonable, the Chancellor has accordingly examined the said exceptions, with all the papers and proceedings referred to, and has had certain explanations from the auditor, without which, it was extremely difficult, if not impossible, to understand the merits of the exceptions.
The Chancellor considered first, the complainant’s exceptions, first and fourth. He conceives that the complainant is entitled to the bar of the act of limitations against all the articles in accounts Nos. 6 and 7, except the two last articles in No. 7, which appear to be charged within the three years next preceding the filing of the bill. The manner in which the complainant has claimed the benefit of the said act, appears to be proper. It was indeed the only manner in which, under the circumstances of the case, he could have claimed it. As to the said two articles in No. 7, it appears to the Chancellor that they are not sufficiently proved. The said accounts, therefore, Nos. 6 and 7, ought to have been wholly rejected by the auditor, except the article of £1 10s. Od., charged for the complainant in No. 6, which, as the auditor states, was admitted by the complainant. Second, as to the second exception, it appears to the Chancellor indefinite and uncertain. It does not specify the money and particular articles chargeable, as it says, in account. Is the Chancellor expected to go all over the five books referred to, and to find out from conjecture which are the particular articles meant by the exceptions ? Besides the said books not being considered as evidence for the defendant, the auditor states that he did not consider them as admissible for the complainant. The said exception is disallowed. Third, with respect to this exception, the auditor states, that there was *482 no evidence of the materials found, except the complainant’s books, which were not proved; and, upon the whole, the exception is disallowed.
The Chancellor proceeded to consider the defendant’s exception; first, the auditor states, and the Chancellor perceives, that there is no evidence of this claim except the books of the complainant, which have been rejected as not being proved-The Chancellor perceives, indeed, that the credit by Edward Norwood to Samuel Norwood for £94 10s. 0d., is opposed to a charge against Samuel Norwood of a balance of £168 Os. id. The exception is disallowed. Second, it was right for the auditor to take the average of the ferriages ; what else could he do ? Would a jury in fixing damages require proof of each receipt ? No! The exception is disallowed. Third, there is no proof of any agreement or understanding between the parties, that the defendant was to be allowed for managing. Besides, it seems that the complainant managed likewise. Upon the whole, the claim seems improper, and the exception is accordingly disallowed. Fourth, account C. No. 5, it seems is an account of debits only, taken from the account settled by the arbitrators, and entered in Edward Norwood’s books. The auditor rightly conceived it proper, that those books, which, for want of probates were not allowed as evidence for him, should not be taken against him. They were entirely laid aside, as was also the award. Fifth, this exception is indefinite and uncertain. It specifies nothing. It does not appear that the auditor has rejected any legal satisfactory proof. The exception is therefore disallowed. Sixth, it does not appear to the Chancellor that any item or article due to the defendant, is established and proved against the complainant by any of the persons or exhibits mentioned in this exception; and it is therefore disallowed.
It is, thereupon Ordered, That the auditor correct his account between the complainant and defendant, or state a new account between them, agreeably to the opinions of the Chancellor and principles herein contained; and that having so done, he return the said account to this court, and that thereon the Chancellor will proceed to a final decree; that is to say, the account to be returned by the auditor shall not be liable to any exceptions; provided it be stated agreeably to the Chancellor’s opinions aforesaid, and his decisions herein contained on the exceptions aforesaid of the complainant, and of the defendant. To admit new exceptions after what has passed, or to allow a correction or amendment of those exceptions on which the Chancellor has decided, would be unreasonable.
In obedience to this order the auditor, on the 22d of May, 1800, reported, that he had re-stated an account between the complainant and defendant, as directed, and there was due to the complainant £776 15s. 6d., including interest to the 31st day of January, 1800.
9th June, 1800. — Hanson, Chancellor. — The auditor of this court having stated and returned an account, agreeably to the opinions of the Chancellor, and the principles expressed in the order or written declaration, containing the Chancellor’s decision on the exceptions of each party to the preceding report:
It is thereupon Decreed, that the last stated account and report of the auditor be confirmed; that the defendant pay unto the complainant the sum of £776 15s. 6d., which is stated by the auditor to be due on the 31st day of January last, from the said defendant to the said complainant; and the said sum shall bear interest from the said day until the time of payment or levying thereof; and the said interest shall *483 accordingly be paid or levied. And it is further Decreed, that the agreement stated in the bill for dividing the land called United Friendship, shall be carried into effect; and that accordingly the defendant by a good deed, to be acknowledged and recorded agreeably to law, shall give, grant, bargain, and sell, release, and confirm, and convey to the complainant and his heirs, all that part of the said tract of land called United Friendship, which has long been and now is in the said Edward Norwood’s possession, as stated in the bill and admitted in the answer, under the agreement aforesaid. And the said Edward in like manner shall convey to the said Samuel Norwood and his heirs, all the other part of the said United Friendship, now in possession of said Samuel, as stated in the bill and admitted in the answer. And the intent of this decree, conformably to the agreement of the parties, is, that the branch from the two sycamores, or from the place where they stood in case they are not now standing, near the mouth of the dry run, shall be the division line, until it intersects the road to the falls; that the next line for division, shall be the road towards Baltimore to the top of the hill; thence the dividing line shall run to the head line, so as to make equal quantity of wood and land to each party; and that the part of Edward Norwood shall be that part on which the new buildings stand.
The agreement aforesaid, for a division, does not contain such precision as might be wished, even with respect to the division of the land; but as the parties each state a possession for many years under the agreement; and by experience it can be made certain; and as justice cannot be done without enforcing the said agreement, or giving it validity, so far as may be, the Chancellor conceives, that to say it is such an agreement as this court cannot enforce, would be a disgrace to the court. Whether or not indeed, the court has jurisdiction; and whether or not it shall use its discretion in exercising that jurisdiction, must frequently depend on the mere circumstances, which distinguish one case from another. Let it only be considered what would be the situation of the parties in the present case, if the court should determine, that notwithstanding the agreement, the parties are to be deemed tenants in common, each liable to a suit for profits, &c. But as to the other part of the agreement, that the profits of the ferry be equal, it does not appear to the Chancellor, that it is definite and certain enough to ground a decree, definite and certain as every decree ought to be; that is to say, this court cannot pass a decree directing Samuel Norwood to provide such a boat, such and so many hands, such ropes and other materials, specifying and particularizing all, as might appear proper for carrying on the ferry to advantage. This court cannot do this, because the agreement specifies nothing; and because this court certainly cannot make, change or new model an agreement. But as nothing is more clear to the Chancellor, than that the meaning of the agreement was that each party should take one-half of the profits of a ferry to be carried on at the place where the ferry, which was the subject of the agreement, was carried on, or so near it, as to enjoy the custom which that ferry would have enjoyed; the Chancellor thought proper to decree as he has done with respect to the profits.
And it is further Decreed, that the defendant Samuel Norwood, be, and he is hereby enjoined to permit the said Edward Norwood to take and to pay to the said Edward weekly, one-half of the profits arising from any ferry, by the said Samuel carried on, at the place where the ferry mentioned in the bill was kept, or so near the place, as to take custom which would otherwise go to any ferry kept at said place; and that the said Samuel Norwood, be further enjoined not to disturb, molest, or interrupt the said Edward Norwood in the enjoyment of one-half of the profits of *484 such ferry, or in carrying on a ferry at the said place, in' case the said Edward shall think proper to provide for carrying on the same, on the said Samuel’s refusing or neglecting to carry the same on jointly with the said Edward, or singly;-allowing the said Edward one-half of the profits; and that the said Samuel be .further enjoined not to change,'or stop up, or obstruct the passage of any road, on either side of the river leading to the said ferry, without the consent of the said Edward; but that all access, as heretofore-, shall be allowed by the said Samuel, to every, person, carriage, horse or 'other animal, or thing coming to the said ferry, or which would come to it, in case there was no obstruction. And in case the said Samuel shall refuse, neglect, or delay to carry, on a ferry jointly with the said Edward, at the place where the ferry aforesaid, first mentioned in the bill, was carried on, and-the said Edward shall think proper to carry on the same for their joint benefit, he, the said Samuel, is hereby enjoined not to carry on without the said Edward’s consent, any ferry which shall interfere with, or take custom from the ferry carried on at the said pla’ce. And in case the said Edward,, on the said Samuel’s refusal, neglecting or delaying as aforesaid, shall actually set'up and carry on a-ferry at the place aforesaid, he shall pay weekly to the' said Samuel, one-half of the profits thereof, after deducting the expense incurred in so setting up and carrying ,on. And it is further Decreed, that the defendant pay unto the complainant, the costs by him expended, in the prosecution of his suit, amounting as taxed by the register, to the .quantity of 18,220 pounds of tobacco. -
On the fullest consideration of all the circumstances of this case, and of the principles established'in this court, the Chancellor has, at length, passed a decree, which, independent of the consent of the parties, and of another tribunal, must be final. After much anxious thought he has satisfied his own judgment and conscience. His feelings will be much gratified if the parties shall be satisfied, that he has done neither more nor less than his duty required; but it appeared to him', possible, without their consent, to place them precisely in the situation contemplated by their agreement. It has hitherto been his practice to consult, as far as possible, consistently with justice, the welfare of every person who has come before him; and therefore he has not.unfrequently proposed to settle a controversy, and to save much further vexation and expense by a decree or consent. Whatever may be the prospect of success, he cannot forbear suggesting to the present parties an accommodation on such terms,.as he conceives an enlightened arbitrator who .should be equally a friend to justice, and to each of them, would prescribe. It is evident, that without a good understanding between them, the ferry cannot advantageously be carried on; and it must remain a constant subject of contention, supposing even that the foregoing decree is to stand. But in their causes there is a variety of difficult points; what will be the decision of the Court of Appeals is uncertain;' and if, in the course of their lives, an end can' be put to their controversies, neither can possibly so far succeed as to. have been a gainer, by it. He is certain then, that neither can be a loser by acceding to his proposal. Actuated by the principles of humanity, and partial to neither, he flatters himself, that neither can reasqnably be offended by a proposition, which, he conceives, will appear reasonable to the friends of both, and to every unprejudiced, disinterested person. On the evidence in the cause, together with the information he has otherwise received, he proposes, .that they sign and file in this court an agreement, to the following effect.
First, that the foregoing decree be set aside by another decree; second, that the new decree direct Samuel Norwood, on the first day of November next, to pay *485 or bring into this court, to be paid to Edward Norwood, the sum of £500; third, that each party release to the other all right to that part of United Friendship in his possession under their agreement; fourth, that Edward convey, transfer, and release, to Samuel, all right to the ferry in the bill mentioned, or to the profits thereof; fifth, that Samuel, on the first day of November, 1801, 1802, 1803, and 1804, pay or bring in as aforesaid, the sum of £375; that is to say, Samuel shall bring in, or pay the sum of £1,500, without interest, by four equal annual instalments; sixth, that on Samuel’s failure, at any of the periods, to pay or bring in, he shall be liable to the usual execution or process, to compel him; seventh, that each parly bear his own costs, those of recording to be equally divided.
Supposing the ferry to produce monthly £80, the annual amount is £960. But it is probable that the receipts will not be so great throughout the year as they have lately been. Suppose then an average of £70, that is, ¿£80 each, for six months, and £60 each, for the other six months. We have then £840 for the amount of the year. From this £840 may be deducted for all expenses and contingencies, at least £140, which reduces the profits to £700, one-half of which is £350. To suppose thjs profit to continue, we must suppose that no other ferry to the federal city is to be erected — that the rates of ferriage are to continue, &c. &c. &c. In short, I should imagine a man entitled in perpetmm, to one-half of the ferry, carried on as it ought to be, and having no dispute whatever about his right, would make a good bargain in selling it for £2,000. But the right is not clearly established, Samuel Norwood claims the ferry landing as his own right; contends, that Edward Norwood has no right whatever, and that the agreement respecting the ferry was only for carrying it on in partnership for a very short term, or whilst the apparatus should last. In short, it is extremely doubtful, whether the Chancellor’s decree will stand; and even, whether in the end Edward Norwood will have any right in the ferry, or if he should have such right, whether, under all circumstances, it may be profitable. Would it not then be prudent in Edward Norwood to accept the offer of about £1,250 for his share of the ferry, to be paid at four annual instalments ? At what expense is his suit to be conducted! With what trouble and vexation is it to be carried on! How uncertain is the issue! and ruinous must the loss of his cause prove! Arguments for Samuel Norwood’s acceptance of the proposed accommodation are equally powerful, supposing the Chancellor’s decree to stand.
From this decree the defendant appealed, and gave his bond in the penalty of £2,000, with two sureties. A solicitor certified thus, ‘the above sureties are sufficient.’ Upon which the Chancellor endorsed the bond thus, ‘sureties approved, 14th June, 1800.’
November term., 1802. — Bv the Court of Appeals. — Jones, Machall, Potts, and Dennis. — Decreed, that such part of the decree complained of, for ratifying and confirming the last stated account and report of the auditor, whereby the defendant was adjudged, and decreed to pay to the complainant the sum of £776 15s. Gd. with interest from the 31st of January, 1800, until the time of payment, be reversed. Decreed, also, that the complainant account with the defendant for the sum of £537 12s. 7d. being the amount of the one-half of the improvements erected on the said tract of land called United Friendship, at the time of the division thereof between the said parties, and that the defendant account with the complainant for the sum of £400, being the amount of the difference of soil, between the respective parts of the *486 said tract of land, and that the said two sums of ¿6537 12s. Id. and ¿6400, bear interest from the 12th November, 1785. And that the auditor, in re-stating the said account, shall also charge the defendant with a moiety of the profits of the said ferry, agreeably to his said last stated account and report, with interest thereon, to be computed from the periods stated in tire said account. And that the auditor, in stating such account, and ascertaining the profits of the new ferry set up by the defendant, shall ascertain the reasonable expense of setting up and establishing the same, as weE as afterwards keeping the ferry, and shall charge the complainant with one-half part of the said expenses. Decreed, also, that all and every part of the said decree respecting the agreement stated in the said bill for dividing the land called United Friendship between the parties, and carrying the same into full effect; and all and every part of the said decree respecting the ferry; and the complainant being entitled to hold one-half part of the same, and to have and receive one moiety of the net profits thereof, as tenant in common with the defendant, conformably to the limitations and conditions contained in the said decree, be affirmed. Decreed, also, that the Chancellor pass such decree and order as shall be necessary to' have the account stated in the manner herein directed; and on return thereof, that he pass a decree for the payment of principal and interest due the complainant; and that in the meantime he pass such further order and decree as may be necessary for carrying into effect those parts of the said decree, affirmed by this court. Decreed, also, that the decree of the Chancellor respecting the payment of costs by the defendant, be reversed, and that each party pay his own costs in the court of Chancery, and in this court. — 1H. fy J. 115.

 Duvall v. Waters, 1 Bland, 569.

 Childrens v. Saxby, 1 Vem. 207; Angerstein v. Hunt, 6 Ves. 488.

 F. N. B. 141.

 Childrens v. Saxby, 1 Vern. 207.